UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------------X

PABLO MINA,

                                                   Plaintiff,

                      -against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER VALERIE MATTEO (SHIELD NO.
04188) in her individual and official capacities,
POLICE OFFICERS JOHN DOE # 1-10 (whose
identities are currently unknown but who are known to be
police officers and/or supervisory personnel of the
New York City Police Department), in their individual
and official capacities,

                                      Defendants.
--------------------------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff, PABLO MINA, by his attorney, Steven E. Lynch, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitution of the United States.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C.

§ 1391(b)(2), in that this is the District in which the events or omissions underlying the claim

arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant

to Fed. R. Civ. P. 38(b).

## PARTIES

6.      The plaintiff is a Hispanic male and was at all relevant times a citizen of the City

and State of New York.

7.      Defendant, the City of New York, was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant, the City of New York, maintains the New York City Police

Department, a duly authorized public authority and/or police department, authorized to perform

all functions of a police department as per the applicable sections of the New York State

Criminal Procedure Law, acting under the direction and supervision of the aforementioned

municipal corporation, the City of New York.

9.      At all times hereinafter mentioned, the individually named defendants, Police

Officer Valerie Matteo and Police Officers John Doe #1-10 were duly sworn police officers of

said department and were acting under the supervision of said department and according to their

official duties.

10.     At all times hereinafter mentioned, the defendants, either personally or through

their employees, were acting under color of state law and/or in compliance with the official

rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13.     On April 16, 2012, at approximately 8:30 p.m., plaintiff and his girlfriend were walking towards plaintiff's car in the vicinity of 1090 East New York Avenue in Brooklyn, New York.

14.     Police Officer Valerie Matteo, Shield Number 04188, and Police Officers John Doe #1 and John Doe #2, all wearing police uniforms, approached plaintiff and attempted to grab plaintiff.

15.     When plaintiff told police officers that they didn't have the right to grab him, the police officers responded that they could do whatever they pleased.

16.     Plaintiff told Police Officer Valerie Matteo and Police Officers John Doe #1 and John Doe #2 that plaintiff was leaving work from a nearby public school and continued walking towards plaintiff's vehicle.

17.     At this point, Police Officer Valerie Matteo and Police Officers John Doe #1 and John Doe #2 informed plaintiff that plaintiff was under arrest.

18.     Plaintiff asked for an opportunity to speak to plaintiff's daughters, who were waiting nearby on the corner of East 96th Street and East New York Avenue.

19.     Police Officer Valerie Matteo told plaintiff that she wanted to talk to plaintiff.

20.   Police Officers John Doe #3-10 arrived.

21.   Police Officer John Doe # 3 held pepper spray in his hand and approached plaintiff.  Police Officer John Doe #3 is a Caucasian male, approximately five feet six inches in height, stocky, and clean-shaven.

22.   Plaintiff asked why he was being arrested and told the police officers that he had heart problems and back problems.

23.   As plaintiff put his hands above his head, Police Officer John Doe #3 pepper sprayed plaintiff's eyes.

24.   Police Officers John Doe #4-10 punched plaintiff.

25.   Then plaintiff was taken to the ground, tasered in his back, screamed, and lost consciousness.

26.   As plaintiff regained consciousness, a female police officer touched plaintiff and said "he's breathing."

27.   As a result of the defendants' above-mentioned actions, the plaintiff lost consciousness and suffered injuries and pain to his head, body, face, and eyes, including but not limited to, emotional distress, bruising, and electrocution.

28.   An ambulance took plaintiff to Kings County Hospital, where the taser probe was removed from plaintiff's back.

29.   On April 17, 2012, plaintiff was charged with Penal Law section 195.05 obstructing governmental administration in the second degree, Penal Law section 205.30 resisting arrest, and Penal Law section 240.20(1) disorderly conduct.

30.   On June 13, 2012, all charges against plaintiff were adjourned in contemplation of dismissal.

31.     On December 12, 2012, the plaintiff's criminal case was dismissed and sealed.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

32.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "31" with the same force and effect as if fully set forth herein.

33.     As a result of defendants' aforementioned conduct, plaintiff was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

34.     As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

### SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth Amendment Violation for Excessive Force
(Against the Individual Officer Defendants)

35.     Plaintiff repeats and re-alleges paragraphs 1 through 34 as if fully set forth herein.

36.     While in the course of their duties and while acting under color of law, Police Officer Valerie Matteo and Police Officers John Doe #1-10 effected a seizure and arrest of plaintiff by intentionally using excessive physical force against plaintiff, including but not limited to tasering, spraying mace in the plaintiff's face, and punching the plaintiff with closed fists.

37.     The physical attacks of the individual officer defendants on plaintiff were

objectively unreasonable.

38.     The individual officer defendants' use of excessive physical force caused injuries to the plaintiff, including but not limited to, loss of consciousness, emotional distress, bruising, electrocution, and pain to his head, body, face, and eyes.

39.     By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiff under 42 U.S.C. §1983.

### THIRD CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

40.     Plaintiff repeats and re-alleges paragraphs 1 through 39 as if fully set forth herein.

41.     The City of New York and the New York City Police Department fail to scrutinize officers and divisions with a history of multiple lawsuits for civil rights violations, like the Brooklyn North Narcotics Division and the individual defendants.

42.     The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008. [1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more

than $117 million.[1]  In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

43.     The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan  547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

44.     Police Officer Valerie Matteo has been previously sued for civil rights violations in the Eastern District of New York and was represented by Corporation Counsel:  George v. City of New York et al, 12-cv-07779-WHP (settling for an unknown amount claims of false arrest and excessive force).

45.     However, the City of New York has isolated NYPD officers like Police Officer Valerie Matteo from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from

---

[1]  Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on July 2, 2013.

[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long
[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953, October 15, 2010 last visited on July 2, 2013.

having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City or the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[3] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

46.     The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

47.     The 69th precinct of the New York City Police Department has an extensive history of civil rights violations. According to the City Comptroller's Office fiscal year report for 2009, 34 Civilian Complaint Review Board complaints originated in 69th precinct.[4] In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their

---

[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on July 2, 2013.

[4] "CCRB: Attribution of Complaints to the Organized Crime Control Bureau 2005-2009," https://data.cityofnewyork.us/Public-Safety/CCRB-Attribution-of-Complaints-to-the-Organized-Cr/v3a6-muuw, lasted visited on July 2, 2013.

police officers from the 69th precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

48.     Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

49.     Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

50.     All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.  Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic

and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

51.     In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with  "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

52.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

53.     Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

54.     As a result of the foregoing, plaintiff Pablo Mina is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory  damages  in an amount to be determined  by a jury;

b.     Punitive  damages  in an amount to be determined  by a jury;

c.     Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

d.     Such other and further relief as this Court may deem just and proper, including

injunctive and declaratory relief.


Dated:  New York, New York
        September 12, 2013                          By:

                                                    _____/s/_____
                                                    Steven E. Lynch
                                                    Attorney for Plaintiff
                                                    The Law Offices of Steven E. Lynch
                                                    233 Fifth Avenue, Suite 4A
                                                    New York, New York 10016
                                                    (T) (718) 858-8737
                                                    (F) (718) 690-3593
                                                    stevenelynch@gmail.com